# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ELENA DVOINIK and BORIS
ZAVADOVSKY,

      Plaintiffs,

v.                                   Case No: 8:22-cv-1700-CEH-SPF

REPUBLIC OF AUSTRIA,

      Defendant.

_____

## ORDER

This cause comes before the Court on Defendant, the Republic of Austria's Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Immunity Under the Foreign Sovereign Immunities Act ("FSIA"). Doc. 47. Plaintiffs, appearing *pro se*, respond in opposition. Doc. 48. Defendant replied. Doc. 51.[1]

Upon review and consideration, and being fully advised in the premises, the Court finds that the motion to dismiss for lack of subject matter jurisdiction is due to be granted.

---

[1] Additionally, the Court has reviewed the Parties' notices of related action and Plaintiffs' "Notice of Newly Discovered Fact," (Doc. 55), which was not filed in compliance with the Middle District of Florida's Local Rules. It is unclear how Plaintiffs' filing relates to their claims or relevant law. The filing simply states that a copy of a book written by Plaintiff Zavadovsky's father is in the Stanford University Library, and that the original manuscripts of the book were part of the property taken by the Austrian police. *See id.*

## RELEVANT FACTS AND PROCEDURAL BACKGROUND[2]

The Second Amended Complaint contains numerous allegations regarding Plaintiffs' immigration status, career histories, family background, Russian-Austrian relations, and news scandals with no clear connection to their claims—and no bearing whatsoever on the Court's analysis of the instant Motion.[3] Consequently, the Court sets out only those facts at least tangentially related to the claims or relevant law. Additionally, Plaintiffs include a twenty-two page "opening statement" to their Complaint. As a result, what they label as the first page is actually the twenty-third page. Rather than use Plaintiffs' pagination, the Court will consider the "Opening Statement" to be the first page and cite the complaint accordingly.

Plaintiffs Elena Dvoinik and Boris Zavadovsky are married U.S. citizens domiciled in Florida since January 2021. Doc. 44 at 1 ¶ 1.[4] Prior to moving to the U.S., they lived in Austria and owned a home there. *Id.* ¶ 7. Before they moved,

---

[2] Facial attacks to subject matter jurisdiction based on Federal Rule of Civil Procedure 12(b)(1) are based on the allegations as pleaded in the complaint, and the district court must take the allegations as true in deciding whether to grant the motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). As described below, Defendant's motion is a facial attack, so Plaintiffs' allegations are taken to be true. Moreover, as it would on a Rule 12(b)(6) challenge, the Court makes all reasonable factual inferences in favor of the Plaintiffs. *U.S. Bank, Nat'l Ass'n as Tr. for Citigroup Mortg. Loan Tr., Inc., Mortg. Pass-Through Certificates, Series 2006-AR9 v. Roesch,* No. 8:24-CV-351-WFJ-AEP, 2024 WL 1885686, at *2 (M.D. Fla. Apr. 30, 2024).

[3] *See e.g.,* Doc. 44 ¶¶ 2–6, 9–21.

[4] This matter is not the Plaintiffs' first case centered on these facts. Plaintiffs have filed at least four other federal lawsuits in the United States related to this case, each of which has been dismissed. *See* 8:22-cv-01127-TPB-CPT (M.D. Fla.); 1:22-cv-24226-JEM (S.D. Fla.); 8:23-cv-00623-KKM-CPT (M.D. Fla.); 1:23-cv-04216-LTS (S.D.N.Y.).

Plaintiffs stored a number of personal items in their home. *Id.* They listed the property as being for sale and/or for rent as a short-term rental. *Id.* ¶¶ 7–8.

On July 12, 2021, Plaintiffs were in Florida when the Austrian police searched their home and seized property of theirs, including various documents and collectibles, without a warrant. *Id.* ¶ 23. Then, as Plaintiffs allege, a group of Austrian police officers, their spouses, and various attorneys and prosecutors used Plaintiffs' personal information to "criminally" log into online accounts, extort Plaintiffs, read and delete their emails, and create counterfeit documents related to luxury eyeglass boutiques and ophthalmological treatment in Florida. *Id.* ¶¶ 23–28. This group of alleged conspirators also transmitted unspecified data to a German-speaking Secret Service employee who aided them in their scheme. *Id.* ¶¶ 28–29. Plaintiffs allege that "Defendants"[5] further falsified emails to the same Secret Service agent and defamed Plaintiffs in statements to Austrian authorities related to medical care in Miami. *Id.* ¶ 31.

Crucially, Plaintiffs allege "Austrian Authorities refused to comply with Austrian law" and international law by investigating the aforementioned events. *Id.* ¶ 32. Plaintiffs present a lengthy description of how they believe the Austrian government funded its defense in this action, arranged payment for its legal fees, and apportioned the work between multiple lawyers. *Id.* ¶¶ 35–47. Notably, these same allegations were central to a motion to disqualify defense counsel Plaintiffs

---

[5] There is just one Defendant in this case, the Republic of Austria, so Plaintiffs' numerous references to multiple Defendants in the Complaint is unclear.

previously filed, which Magistrate Judge Sean P. Flynn denied as meritless and unsupported by authority. *See* Doc. 46.

The remainder of the complaint is a jumbled mixture of sentences, bullet points, and numbered paragraphs. Doc. 44 at 24–67. Ultimately, Plaintiffs bring the following claims: Count One (Declaratory Judgment); Count Two (Replevin); Count Three (Conversion); Count Four ("Violation of international law"); Count Five (Intentional Infliction of Emotional Distress ("IIED") as to Dvoinik); Count Six (IIED as to Zavadovsky); Count Seven (Tortious Interference with Dvoinik's Prospective Business Relationship); Count Eight (Tortious Interference as to Zavadovsky); and Count Nine (Invasion of Privacy).

As Defendant notes, the Complaint results in a "nearly incoherent" pleading and memorandum of law. Doc. 47 at 2. However, Defendant argues that it has received sufficient notice of Plaintiffs' claims, that dismissal due to mere formal pleading issues is unnecessary, and that the matter should instead be dismissed for lack of jurisdiction based on sovereign immunity under the FSIA. *Id.* The Court agrees and will dismiss the claims based on sovereign immunity.[6]

---

[6] "A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (citation omitted). The Eleventh Circuit has identified four general types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Here, the Court agrees with Defendant that the main deficiencies in the operative complaint are substantive and concern subject-matter jurisdiction under the FSIA. The Complaint gives Defendant adequate notice of the claim against it and the basis for this claim. Thus, the Court declines to dismiss it on shotgun pleading grounds. *Weiland*, 792 F.3d at 1323.

4

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a foreign-state Defendant may move to dismiss claims against it for "lack of subject-matter jurisdiction."[7] At that point, "[a] plaintiff who seeks to sue a foreign state has the burden of establishing subject matter jurisdiction by 'producing evidence' that one of the [FSIA's] sovereign-immunity exceptions applies." *Sequeira v. Republic of Nicar.*, 815 F. App'x. 345, 348–49 (11th Cir. 2020) (quoting *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312–13 (11th Cir. 2009)). "If the plaintiff satisfies this burden, the foreign state then has the burden of proving by a preponderance of the evidence that the exception cited by the plaintiff does not apply." *Id.*

Jurisdictional challenges under Federal Rule of Civil Procedure 12(b)(1) lie within the exclusive province of the trial court. *Morrison v. Amway Corp.*, 323 F.3d 920, 924–25 (11th Cir. 2003). "Attacks on subject matter jurisdiction under [Rule] 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his

---

[7] "If a foreign state is immune under the FSIA, courts of the United States lack both subject matter and personal jurisdiction in any suit against it." *Samco Glob. Arms, Inc. v. Arita,* 395 F.3d 1212, 1214 (11th Cir. 2005). Defendant has only framed its argument in terms of subject matter jurisdiction, so the Court follows suit.

complaint are taken as true for the purposes of the motion." *Id.* at 1261 (internal quotation marks omitted).

"Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings . . ." *Id.* Thus, in a factual attack, unlike a Rule 12(b)(6) motion, the court may consider evidence outside of the pleadings, such as testimony and affidavits, and weigh the facts in order determine whether jurisdiction is proper. *Id; see also Morrison*, 323 F.3d at 924.

Here, although not explicitly addressed by the Parties, Defendant's motion brings a facial attack against the complaint, one based on the pleadings and not involving factual matters outside the Complaint. *Cf. Devengoechea v. Bolivarian Republic of Venezuela,* No. 1:12-CV-23743-PCH, 2023 WL 5625653, at *2 (S.D. Fla. July 11, 2023). Therefore, the Court takes Plaintiffs' allegations to be true for purposes of this order.

## DISCUSSION

Plaintiffs argue that this case falls under the FSIA's expropriation and non-commercial tort exceptions to foreign sovereign immunity (*see* Doc. 44). In FSIA cases, district courts "must determine, as a threshold matter, whether [they] ha[ve] subject matter jurisdiction over the claims at issue." *Trigeant Ltd. v. Petroleos de Venezuela S.A.*, 2010 WL 11505968, at *9 (S.D. Fla. Jan. 5, 2010).

Although Plaintiffs' claims all arise out of the search of their home and seizure of certain items by Austrian law enforcement, some of the Nine Counts allege

additional facts, such as Plaintiffs' invasion of privacy and IIED claims. After setting forth the Parties' arguments, the Court considers whether the exceptions Plaintiffs cite apply, taking their factual allegations to be true and making all reasonable inferences in their favor. After careful consideration, the Court finds that no FSIA exception applies to any of Plaintiffs' claims. Thus, Defendant is entitled to immunity from suit.

Defendant moves to dismiss based on foreign sovereign immunity under the FSIA. *See* Doc. 47. It first argues that the Second Amended Complaint bears little resemblance to the complaint Plaintiffs attached to their Motion to Amend (Doc. 31) and is chock-full of immaterial and scandalous statements that ought to be disregarded. *Id.* at 1–2. This is followed, Defendant argues, by a nearly incoherent narrative spanning forty-four pages. *Id.* at 2. However, rather than dismissing the Complaint on shotgun pleading grounds, Defendant argues that the case can and should be dismissed on grounds of jurisdiction and immunity. *Id.*

Defendant argues that it is entitled to absolute immunity because neither of the statutory exceptions at issue apply. *Id.* at 2–4. As to the expropriation exception in 28 U.S.C. § 1605(a)(3), Defendant argues that neither commercial nexus requirement is satisfied. *Id.* at 3, 7–15. Secondly, Defendant argues that the non-commercial tort exception in 28 U.S.C. § 1605(a)(5) does not apply for multiple independent reasons, including because the entirety of the alleged torts and injuries did not occur in the United States. *Id.* at 3–4, 15–23.

Plaintiffs respond via bullet points, addressing certain arguments and ignoring others. *See* Doc. 48. They also attach several exhibits, although the relevance of many is not immediately clear.[8] Plaintiffs also take issue with various actions of Defendant's attorneys and largely fail to respond to the substantive arguments in the Motion to Dismiss. *Id.* On reply, Defendant addresses each of Plaintiffs' responses regarding the statutory exceptions and argues that none hold up under examination. *See* Doc. 51 at 1-11. Therefore, Defendant argues that it is absolutely immune under the FSIA and that the case should be dismissed with prejudice, as amendment would be futile. *Id.* at 11.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in [United States] courts." *Comparelli v. Republica Bolivariana de Venezuela*, No. 16-16748, 2018 WL 2749717, at *2 (11th Cir. June 8, 2018) (quoting *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 548 (11th Cir. 2015)). A foreign state defendant is immune from the United States' jurisdiction unless one of the FSIA statutory exceptions applies. *Id.* (quoting *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1296 (11th Cir. 2005)).

A plaintiff bears the burden of overcoming this presumption by plausibly alleging or producing evidence that the defendant's conduct falls within one of these exceptions. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009). Whether

---

[8] For example, Plaintiffs attach Google Maps timeline screenshots detailing travel within Florida in the summer of 2021. This is unrelated to the case and relevant legal issues. Doc. 48 at 24–28.

the plaintiff has satisfied his burden of production in this regard is determined by looking at "the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties." *In re Terrorist Attacks on September 11, 2001,* 538 F.3d 71, 80 (2d Cir. 2008). Once the plaintiff demonstrates that a statutory exception applies, the burden shifts to the defendant to prove, by a preponderance of the evidence, that the plaintiff's claims do not fall within that exception. *See S & Davis Int'l Inc. v. Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000); *Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.,* 179 F.3d 1279, 1290 (11th Cir. 1999).

The Court finds, as described *infra*, that Plaintiffs fail to demonstrate that any statutory exception is applicable to their claims, even taking their allegations to be true and drawing all reasonable inferences in their favor. Therefore Defendant, the Republic of Austria, does not bear the burden to rebut the applicability of the exception with evidence. *See Mezerhane v. República Bolivariana de Venezuela,* No. 11-23983-CIV, 2013 WL 11322604, at *5 (S.D. Fla. Dec. 30, 2013), *aff'd sub nom. Mezerhane v. Republica Bolivariana de Venezuela,* 785 F.3d 545 (11th Cir. 2015).

As a preliminary matter, the parties do not dispute that Defendant is a foreign sovereign entitled to the presumption of sovereign immunity under the FSIA. Plaintiffs argue that two statutory exceptions to sovereign immunity apply in this case: the expropriation exception, 28 U.S.C. § 1605(a)(3), and the non-commercial tort exception, *id.* at § 1605(a)(5). As explained below, neither exception applies. Accordingly, the Court lacks subject-matter jurisdiction over Plaintiffs' claims and must dismiss the Complaint without prejudice.

### The Expropriation Exception – 28 U.S.C. § 1605(a)(3)

First, Plaintiffs argue that the expropriation exception applies to Counts One through Four. For this exception to apply, Plaintiffs must allege that rights in property are at issue, property was taken in violation of international law, and at least one of two statutory commercial nexus requirements is satisfied. *Comparelli*, 891 F.3d at 1319 (citing 28 U.S.C. § 1605(a)(3)). A taking of property violates international law "(1) when it does not serve a public purpose; (2) when it discriminates against those who are not nationals of the country; or (3) when it is not accompanied by provision for just compensation." *Id.* at 1319–20.

The nexus requirements are based upon commercial activity in the United States by the defendant foreign state. *See* 28 U.S.C. § 1605(a)(3); *Comparelli*, 891 F.3d at 1326. Specifically, the property taken must be either: (1) "present in the United States in connection with a commercial activity carried on in the United States by a foreign state," or (2) "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States." *Id.*

As is suggested by the disjunctive language of the commercial nexus requirements, the standard is different for a foreign state itself (like Defendant), as opposed to a state's agencies and instrumentalities. *See De Csepel v. Republic of Hungary,* 859 F.3d 1094, 1104–05 (D.C. Cir. 2017); *see also Agudas Chasidei Chabad of United States v. Russian Federation,* 528 F.3d 934, 942 (D.C. Cir. 2008). Because the Republic of Austria is the only defendant in this suit, Plaintiff must satisfy the first

10

nexus requirement by pleading that the "property [in issue] or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3).

Commercial activity can be "either a regular course of commercial conduct or a particular commercial transaction or act." *Id.* § 1603(d). Commercial activity is considered to be in the United States if it has "substantial contact with the United States." *Id.* § 1603(e).

Even assuming Plaintiffs plausibly alleged that rights in property are at issue and that their property was taken in violation of international law, they do not meet the commercial nexus requirement. First, they fail to allege that the property expropriated from them is present in the United States. Consequently, they also fail to allege that the property is in the United States "in connection with a commercial activity carried on in the United States by the foreign state."[9]

Defendant asserts that the plain text of the FSIA is dispositive, but also cites several cases in support of its argument. Those cases indeed apply and are instructive.  First, in *De Csepel*, the D.C. Circuit held that with respect to foreign states—"an adequate commercial nexus between the United States and the defendant—is satisfied only when the property is present in the United States." 859

---

[9] As Defendant notes, Plaintiffs failed to cite the first nexus requirement in the operative Complaint (Doc. 44 at 12), perhaps signaling their understanding that this requirement is not met. Doc. 47 at 8.

F.3d at 1104.[10] Defendant correctly points out that not only does nothing in the Complaint suggest that the property taken under the Austrian search warrant is present in the United States, but that it is clear that Plaintiffs do not allege that the property is present in the U.S. "in connection with" Austrian commercial activity. Doc. 47 at 9–10.

Next, in *Simon v. Republic of Hungary*, 812 F.3d 127, 146 (D.C. Cir. 2016) the D.C. Circuit found that a commercial nexus had not been adequately pled as to the foreign state defendant because the plaintiffs offered only a "bare, conclusory assertion" to that effect.[11] *Id.* at 148. That case involved Holocaust survivors suing Hungary for the seizure of their property during the Holocaust. The *Simon* Court first found that the plaintiffs had plausibly alleged a taking in violation of international law, and that a right in property was at issue. *Id.* at 142–146. Moreover, it found that by alleging that "the Hungarian defendants liquidated the stolen property, mixed the resulting funds with their general revenues, and devoted the proceeds to funding various governmental and commercial operation," the plaintiffs

[10] In *De Csepel*, the action was brought based on expropriated art that was not in the United States. 859 F.3d at 1107. As was the case when *De Csepel* was decided, it still appears to be true that every Circuit to have considered the issue has found that only the first clause applies to foreign state defendants. *See Garb v. Republic of Poland*, 440 F.3d 579, 589 (2d Cir. 2006) (explaining that the first nexus requirement "sets a higher threshold of proof for suing foreign states in connection with alleged takings"); *see also* Federal Judicial Center, The Foreign Sovereign Immunities Act: A Guide for Judges 69–70 (2018) ("As is often the case under the FSIA, standards established for the foreign state differ from those established for its agencies and instrumentalities.").

[11] Defendant also argues that § 1605(a)(3) independently does not apply because the alleged taking was not in violation of international law. Doc. 47 at 14–15. Because the commercial nexus element is dispositive, the Court need not reach this argument.

had plausibly alleged that the various Hungarian defendants still possessed the property or proceeds thereof. *Id.* at 147–148.

However, the Court found that as to Hungary (a foreign state), the plaintiffs' claims failed because they had only alleged in a conclusory fashion that the "property is present in the United States in connection with commercial activity carried on by Hungary within the United States." *Id.* at 148–149. Accordingly, the Court found that the commercial nexus requirement was not met. Defendant argues that here too, because Plaintiffs' claims concern property seized in Austria that remains in Austria, the expropriation exception does not apply.

Plaintiffs respond that Defendant's authority is "not valid." Specifically, they appear to argue that because the decision in *Philipp v. Fed. Republic of Germany,* 894 F.3d 406 (D.C. Cir. 2018), was vacated and remanded in part by the Supreme Court, Defendant should not have cited it. [12] Doc. 48 at 3–4. Furthermore, Plaintiffs cite to *Simon v. Republic of Hungary,* 77 F.4th 1077 (D.C. Cir. 2023) to argue that "direct tracing" of the property that was expropriated is not necessary to satisfy the nexus requirement. *Id.* at 3. As to the argument regarding "invalid" caselaw, Defendant

_____

[12] As Defendant points out on reply, the district court's dismissal of Hungary was affirmed by the Circuit Court. *Simon*, 812 F.3d at 147.

And *Philipp*, a subsequent decision of the D.C. Circuit Court, applied this holding. 894 F.3d at 415 ("The district court must, as required by *Simon* and *de Csepel*, grant the motion to dismiss with respect to the [foreign state].") The United States Supreme Court found similarly, holding that the Plaintiffs had "not shown that the FSIA allows them to bring their claims against Germany." *Fed. Republic of Germany v. Philipp,* 592 U.S. 169 at 187 (2021).

responds that in fact, the foreign state defendants in *Philipp* and *De Csepel* (Germany and Hungary) were each dismissed under the clear wording of the FSIA expropriation exception, and that the cases were vacated on other grounds. Doc. 51 at 1–4. Defendant's reading of these cases, and its argument that the claims in this case do not fall under the expropriation exception, are correct.

This is because a foreign state can be sued under the first commercial nexus requirement only when the property allegedly expropriated is located in the United States in connection with commercial activity there. 28 U.S.C. § 1605(a)(3). In this case, the property Plaintiffs claim was expropriated is all in Austria, not the United States. *See* Doc. 44 at 24–43. Therefore, the property is not "present in the United States in connection with a commercial activity carried on in the United States by [the Republic of Austria]," 28 U.S.C. 1605(a)(3), nor is it present in the United States at all. Consequently, Plaintiffs have not sufficiently alleged a sufficient commercial nexus pursuant to which the expropriation exception would apply. Counts One through Four must be dismissed for lack of subject matter jurisdiction.

### The Non-Commercial Tort Exception – 28 U.S.C. § 1605(a)(5)

The non-commercial tort exception to the Foreign Sovereign Immunities Act (FSIA) only applies when the entire tort—both the wrongful act(s) and resulting injuries—occurs in the United States. Courts have consistently applied the "entire tort rule" to reject claims where key events or the tortfeasor's intent originate outside the U.S. Subsequent cases have reinforced this rule by dismissing claims where tortious conduct was initiated abroad, even if the effects were later felt in the United

States. Here, because the alleged key wrongful acts—including the search, seizure, and refusal to return property—occurred in Austria, the exception does not apply due to the entire tort rule. The Court, therefore, lacks jurisdiction over Plaintiffs' claims under FSIA.

Plaintiffs allege in the Complaint (and argue in their response) that the Court has jurisdiction over Counts Five through Nine under the Non-Commercial Tort exception. This exception potentially applies in any case:

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

28 U.S.C. § 1605(a)(5).

However, the exception does not extend to "**(A)** any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or **(B)** any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* § 1605(a)(5)(A–B). Additionally, the exception only covers Plaintiffs' claims if "the 'entire tort' [was] committed in the United States." *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 109, 116–17 (2d Cir. 2013) (citing *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 441 (1989)).

The non-commercial-tort exception was drafted primarily to address foreign immunity for traffic accidents and other torts occurring in the United States, as the Supreme Court noted in *Amerada Hess,* 88 U.S. 428 at 440–41. The Supreme Court

articulated the "entire tort" rule for the first time in that decision. *Id.* at 441. At issue
was whether jurisdiction was proper over a suit brought against the Argentine
Republic for damages stemming from a tort committed by Argentina's armed forces
on the high seas. *Id.* at 431. The Court ultimately held that the action was barred by
the FSIA, holding that the noncommercial tort exception "covers only torts
occurring within the territorial jurisdiction of the United States." *Id.* at 441.

Subsequently, Courts have elaborated on the breadth of the entire-tort rule.
For example, recent decisions place emphasis on where the intent to commit the
alleged torts came from—*i.e.,* within the United States, or abroad.

For example, Defendant cites *Doe v. Federal Democratic Republic of Ethiopia*, 851
F.3d 7 (D.C. Cir. 2017), in which Plaintiff, an Ethiopian asylee in the United States
(proceeding pseudonymously) was tricked into downloading a program that recorded
the activities of his computer and then communicated with a server in Ethiopia,
enabling Ethiopian authorities to spy on him from abroad. The D.C. Circuit upheld
the lower court's dismissal of the complaint on the ground that § 1605(a)(5)
abrogates sovereign immunity only for a tort occurring entirely in the United States.
*Id.* at 8–10. The court held that unlike the commercial activity exception, the
noncommercial tort exception does not ask where the "gravamen" occurred, only
where the "entire tort" occurred. *Id.* at 10–12. The tortious intent aimed at Doe
plainly lay abroad, and the tortious acts of computer programming occurred abroad.
*Id.* Moreover, Ethiopia's placement of the virus on Doe's computer, although
completed in the United States when Doe opened the infected e-mail attachment,

began outside the United States. It thus could not be said that the entire tort occurred in the United States. *Id.*

In citing to *Amerada Hess*, the *Doe* Court observed that it is "unsurprising" that transnational cyberespionage should lie beyond § 1605(a)(5)'s reach, since "Congress' primary purpose in enacting the exception was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law." *Id.* at 11.

Defendant argues that this exception does not apply for multiple reasons. *See* Doc. 47 at 15–23. First, because it is longstanding precedent under the "entire tort" rule that both the injury and the tortious conduct must occur in the United States. *Id.* at 15–18. Defendant also argues that, even if an exception to the FSIA was established, Florida's litigation privilege would serve as an absolute bar to this suit. The Court need not reach this argument, because the entire tort rule serves to preclude Plaintiffs' claims.[13]

Plaintiffs allege that Counts Five through Nine are covered by the non-commercial tort exception. Doc. 44 at 43–58. Counts Five and Six allege intentional infliction of emotional distress based on "humiliation, harassment, threatening,

---

[13] Defendant also argues that many of the allegations and claims within these counts, including "fraud, [tortious] interference, slander, and deceit" are expressly excluded under the language of the tort exception. Doc. 47 at 4. Defendant is right, as the exception specifically carves out "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *See* 28 U.S.C. § 1605(a)(5)(B). Nevertheless, the Court need not sift through and reject Plaintiffs' various allegations under this sub-clause piecemeal because the entire tort rule definitively bars all of their claims.

abuse of process, violations of ethical rules and Florida Reg Rules of Professional Conduct, defamatory actions against Dvoinik, misrepresentation of facts and of law, providing the federal courts with false legal citation, perjury and fraud, and omission to cooperate and to return Dvoinik's business documents, tax relevant documents, personal medical records" (*id.* at 43) and identical allegations for Zavadovsky (*id.* at 48). Counts Seven and Eight allege "tortious interference" as to each Plaintiff. Dvoinik alleges that Defendant intentionally withheld her education certificates and continues to withhold her business documents. Zavadovsky alleges the same as to his own documents and also alleges that defense counsel received instructions from Austria and Austrian officials in doing so. *Id.* at 48–56. Count Nine is titled "Invasion of privacy in violation of due process and Plaintiffs' fundamental rights involved privacy." *Id.* at 56. It is unclear what cause-of-action Plaintiffs attempt to assert in this Count, but they specifically note that they have been "persecute[d]" "maliciously" in Austria based on defamatory information and hindered from using their Austrian real estate. *Id.* at 59–60.

Plaintiffs fail to plausibly allege that the second exception applies to their claims.[14] First, and most apparently, the second exception does not apply because the exception covers only those torts occurring "entirely" within the territorial jurisdiction of the United States. *See Schermerhorn v. Israel*, 876 F.3d 351 (D.C. 2017). Both the injury and the tortious act or omission must occur in the United States.

---

[14] Because the Court concludes that the noncommercial tort exception does not apply in this context due to Plaintiffs' failure to satisfy the "entire tort" rule, it is unnecessary to consider the "discretionary function" arguments raised by Plaintiffs and rebutted by Defendant.

*Amerada Hess,* 488 U.S. at 439. Here, the tortious acts or omissions from which the case arises—the allegedly illegal search of Plaintiffs' home, seizure of their property, and refusal to return the property or properly investigate the incidents—took place entirely in Austria. Plaintiffs' various other claims involving defense counsel took place at least in part in Austria (or at the behest of officials in Austria who intended to harm them). Therefore, as described below, the remaining counts are all due to be dismissed without prejudice for lack of subject matter jurisdiction.

*Counts Five and Six*

Count Five is pled in a scattershot manner, but at its core alleges that "Austria organized, financed and *controlled* an awful black PR campaign accompanied with intimidations, humiliations and threats, against Plaintiffs in Florida, with the intend [sic] to cause Plaintiffs severe emotional distress, to deprive them of income and with the purpose to avoid liability for theft of US classified information, Plaintiffs [sic] valuable property and to conceal crimes committed against Plaintiffs in Austria." (Doc. 44 at 45–46) (emphasis added). Because the allegations underlying both claims are that Defendant orchestrated and financed the tortious conduct from Austria, and because the claim arises from Defendant's alleged theft of information and property in Austria, the entire tort rule clearly applies to bar it. *Amerada Hess*, 488 U.S. at 441.

The same is true for Count Six, which does not even include facts separate from the previous count. Instead, Plaintiffs drop a perfunctory citation to Count Five's description of "[t]he acts of the Republic of Austria and [defense counsel] amounting to extreme and outrageous conduct." Doc. 44 at 48. As to both counts,

the tortious acts or omissions and the injury did not take place entirely in the United States. Therefore, the non-commercial tort exception set forth in 28 U.S.C. 1605(a)(5) does not apply, and the Court does not have jurisdiction over these counts. *Amerada Hess*, 488 U.S. at 441; *see also Doe,* 851 F.3d at 10; *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 116; *Watson v. Kingdom of Saudi Arabia,* No. 3:21-CV-329/MCR/ZCB, 2023 WL 4047586, at *23 (N.D. Fla. May 11, 2023).

*Counts Seven and Eight*

Count Seven alleges that the Republic of Austria's failure to return Plaintiff Dvoinik's educational documents between July 2021 and March 2022, and its failure to return "all business documents" from July 12, 2021, to the present, constitutes tortious interference with her prospective business relationships as an international lawyer. Doc. 44 at 49–52. The tortious act (and/or omission) alleged is Defendant's seizure of the documents in Austria and refusal to return the documents (which remain in Austria). Again, under the entire tort rule, the non-commercial tort exception set forth in 28 U.S.C. § 1605(a)(5) would not apply because the tortious conduct and injury did not occur entirely in the United States.

Count Eight is nearly identical, although it is based on Defendant's failure to return Zavadovsky's documents taken from Plaintiffs' home in Austria.[15] Thus, just

---

[15] *See* Doc. 44 at 53 ("The Republic of Austria omitted to return all Zavadovsky's educational documents from July 12, 2021, until March 29, 2022; have been omitting to return all business documents from July 12, 2021, until present. Republic of Austria, its agencies, officials, refused to respond on Plaintiffs complaints, letters, inquiries (from July 12, 2021, until present), refused to communicate in any way. Austrian foreign agent and Webner, acting in Florida, since September 2022 continuously humiliated and harassed

as Count Seven failed to fit the requirements of the non-commercial tort exception, Count Eight fares no better, because the entirety of the tortious conduct and injury did not occur in the United States. *Amerada Hess*, 488 U.S. at 441.

*Count Nine*

This Count, brought by both Plaintiffs, alleges an invasion of privacy in violation of due process and Plaintiffs' fundamental rights. Doc. 44 at 56. That violation stems from Austrian "police officers' tortious actions against Plaintiffs." *Id.* Plaintiffs describe their injuries in detail. *See* Doc. 44 at 58–59.

Upon review of the Plaintiffs' complaint and response to the Motion, it is clear that the entire tort rule precludes the Court from taking jurisdiction over this final Count. First, the claim is premised on the actions of Austrian police officers—in Austria. *Id.* at 57–58 Next, Plaintiffs claim that Austria continues to persecute Plaintiffs "in Austria" based on defamatory information received from a number of individuals and regarding an alleged forgery of medical documents. *Id.* at 58–59. Finally, Plaintiffs allege that they were injured by the fact that Defendant added them to a "wanted list" in Austria for suspicions of forgery, which prevented them from entering the country and using or maintaining their Austrian real estate. *Id.* at 59. From these allegations, it is clear that, as Defendant argues, the injury *and* tortious conduct in this Count took place predominantly in Austria, not the United States. Moreover, any intent to injure Plaintiffs clearly came from abroad, based on

---

Plaintiffs and ridiculously refused to discuss the fact that the harm to Zavadovsky in regard of withholding of her business documents is continuous to be caused.").

their own accusations of a concerted and complex scheme against them by the Austrian state. *Doe*, 851 F.3d at 10–12. Therefore, Austria is entitled to immunity from this claim under the entire-tort rule.

As the complaint is due to be dismissed for lack of subject matter jurisdiction, the Court must dismiss it without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *see also Ezemarval, LLC v. El Instituto Postal Dominicano,* No. 22-21822-CIV, 2024 WL 1862924, at *3 (S.D. Fla. Mar. 28, 2024).

Accordingly, it is **ORDERED**:

1. Defendant's Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and Immunity Under the Foreign Sovereign Immunity Act, and Incorporated Memorandum (Doc. 47) is **GRANTED**.

2. Plaintiffs' Second Amended Complaint (Doc. 44) is **DISMISSED without prejudice for lack of subject-matter jurisdiction**.

3. The clerk is directed to terminate any pending motions or deadlines and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on February 24, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties